IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

LENA DAVENPORT, an adult       CIVIL ACTION
individual,
         Plaintiff,

    vs.                          CASE NO: 2:13-CV-00250-DSC

BOROUGH OF HOMESTEAD, a Municipal
Corporation;
CITY OF PITTSBURGH, a Municipal
corporation;
IAN STRANG, individually and in his
official capacities as a Police Officer of the
Borough of Homestead,
JAMES ILGENFRITZ, individually and in his
official capacities as a Police Officer of
the Borough of Homestead;
LOUIS SCHWEITZER,
individually and in his official capacities
as a Police Officer of the City of Pittsburgh
STEPHEN MATAKOVICH,
individually and in his official capacities
as a Police Officer of the City of Pittsburgh,
CALVIN KENNEDY, individually and in his official capacities
as a Police Officer of the City of Pittsburgh,
THOMAS GORECKI, individually and in his
official capacities as a Police Officer
of the City of Pittsburgh, and
NATHAN HARPER, in his official
capacity as a Chief of Police
of the City of Pittsburgh,
JEFFREY DESIMONE in his official
capacity as a Chief of Police of Borough of Homestead,
and IGOR BOYKO, individually and in his official capacities
as a Police Officer of the City of Pittsburgh,

         Defendants.

## PLAINTIFF'S PRETRIAL STATEMENT

1

## PLAINTIFF'S PRETRIAL STATEMENT,

AND NOW, comes the Plaintiff, LENA DAVENPORT, an adult individual, by and through her attorneys, J. Kerrington Lewis, Esquire and the law firm of Lewis, Lewis & Reilly, and files the within, Plaintiff's Pretrial Statement, as follows:

### I.  NARRATIVE STATEMENT OF FACTS TO BE OFFERED AT TRIAL

Plaintiff, Lena Davenport, an innocent passenger in an automobile driven by her son on the morning of January 13, 2013, intends to prove that she suffered a life threatening bullet wound to her head at about her right eye as a result of a police pursuit of that automobile from Homestead, Pennsylvania into a densely populated area of the City of Pittsburgh where four Pittsburgh Police Officers indiscriminately discharged their weapons into the passenger compartment of that vehicle.

Specifically, Plaintiff intends to present facts which will show that she was deprived of her 14th Amendment substantive due process rights as a result of the actions of Defendants,  Homestead Police Officers, Ian Strang, and James Ilgenfritz, who maintained that police pursuit with knowledge of  a number of facts which should have led them to terminate that pursuit before it ever reached the City of Pittsburgh, including the facts that this pursuit was for nothing more than an alleged red light traffic violation and that it was abundantly apparent that forcing the driver of that vehicle into a densely populated area of the City of Pittsburgh would lead to the physical harm of Plaintiff and worsen her legal plight.

Plaintiff intends to show through the testimony of Sergeant James Perry of The Pittsburgh Police, who ordered the pursuit to be terminated shortly after it reached the city limits of Pittsburgh, that any police officer trained in reasonable policies on vehicular police pursuits would have terminated the pursuit before it reached the city limits of Pittsburgh. Plaintiff intends to submit that it may be inferred that Defendants, Strang and Ilgenfritz could not have had any arguably reasonable belief that the vehicle would stop once it reached that densely populated area of the City of Pittsburgh and that they intended to harm of Plaintiff and worsen her legal plight by forcing the driver of that vehicle into that area.

Plaintiff will prove that although The Borough of Homestead had in place policies to safeguard the due process rights of innocent individuals who might be injured as a result of a vehicular police pursuits and that there had been prior police pursuits during the times of the employment Defendants, Strang and Ilgenfritz, there was absolutely no training, supervision, or discipline of any Homestead Police Officers with respect to those policies prior to or after January 13, 2013.  Plaintiff intends to argue that the conduct of the Defendant, Homestead Chief of Police, Jeffery DeSimone, evidenced deliberate indifference to train, supervise, and discipline Homestead's officers in these policies and their application in situations which would with reasonable certainty be likely to present to them, including but not limited to the type of situation which presented to Defendants, Strang and Ilgenfritz on January 13, 2013, as alleged in this matter.

3

Plaintiff also intends to present testimony that the individual officers of the Pittsburgh Police Department, Defendants, Louis Schweitzer, Stephen Matakovich, Calvin Kennedy, and Thomas Gorecki used excessive and indiscriminate force by discharging their firearms into the passenger compartment of the vehicle in which Lena Davenport was an innocent passenger. Plaintiff intends to assert that their conduct violated the policies of the Police Department of The City of Pittsburgh, that their conduct was not objectively reasonable under the circumstances, and that their use of excessive and indiscriminate force violated her rights under the Fourth and Fourteenth  Amendments of the United States Constitution and 42 USC §1983.

Plaintiff intends to prove that at the time Officer Schweitzer, who was the first to shoot into the passenger compartment of the vehicle at about the corner of 17th and East Carson Streets in the City of Pittsburgh, shot four bullets toward the passenger compartment of the vehicle, neither he nor any third party was  faced with imminent death or serious bodily injury;  that he failed to act reasonably to avoid the use of deadly force and acted against the applicable policies of the City of Pittsburgh, and that he shot bullets at and into the passenger compartment of the vehicle while standing at a position on the (passenger) side of the vehicle as it passed him.

Plaintiff intends to prove that at the time Officers Matakovich and Kennedy, who were next to shoot into the passenger compartment of the vehicle at about the middle of the block between 16th and  17th Streets on East Carson Street in the City of Pittsburgh, shot four bullets and one bullet, respectively,  toward the passenger compartment of the vehicle, neither they nor any third party was faced with imminent death or serious bodily injury;  and that they failed to act reasonably to avoid

4

the use of deadly force and acted against the applicable policies of the City of Pittsburgh in using deadly force when they shot bullets into the passenger compartment of the vehicle.

Plaintiff intends to prove that at the time Officer Gorecki, who was the last of these Defendants to shoot into the passenger compartment of the vehicle at about the middle of the block between 13th and 12th Streets on East Carson Street in the City of Pittsburgh, shot two bullets toward the passenger compartment of the vehicle, neither he nor any third party was faced with imminent death or serious bodily injury, that he failed to act reasonably to avoid the use of deadly force and acted against the applicable policies of the City of Pittsburgh in using deadly force when he shot bullets into the passenger compartment of the vehicle from a position of safety and from the right (drivers) side of the vehicle as it went past him and after it had come to a stop and after the air bags of the vehicle had deployed. In fact, Plaintiff intends to show that one of the bullets he fired passed from one end of the driver's side air bag to the other after said air bag had deployed.

Plaintiff intends to prove that that although all the Pittsburgh Police Officers who shot in the direction of the vehicle in which she was a passenger on January 13, 2013, except Officer Schweitzer, have made statements and stated at depositions that all the bullets they fired were fired at the driver when the vehicle was in front of and coming at them, there is not one bullet hole which pierced the windshield of that automobile. From this fact, Plaintiff intends to submit that the only path for the bullet which hit her at or about her right eye to have travelled was from the side of the vehicle and that firing from the side of a vehicle under circumstances such as those which presented to these officers on January 13, 2013 was clearly objectively unreasonable.

5

Plaintiff will adduce evidence that although there were policies in force at the time of these shootings which provided that Pittsburgh Police Officers should not discharge their firearms at a moving vehicle or occupants of a moving vehicle unless the occupants are using deadly force against an Officer or third person by means other than the vehicle or when the vehicle is being operated as a weapon and either an Officer or third party is faced with imminent death or serious bodily injury and the Officer has done everything reasonable to avoid the use of deadly force was inadequate, there was no training, supervision, or discipline of its officers in these policies. Further, from the failure of the City to do more than publish such Orders or perhaps have them read at roll calls or posted on bulletin boards, and from the City's failure to train, supervise, or discipline it's officers after at least one prior instance of the use of excessive force which resulted in the death of Nicholas Haniotakis on March 15, 2009, Plaintiff will prove that Defendants, Chief Nathan Harper and the City of Pittsburgh, neglected and breached and showed a deliberate indifference to their duty to train, supervise, and discipline it's officers in these policies and their application in situations which would with reasonable certainty be likely to present to Officers, including but not limited to the type of situation which presented to the Pittsburgh Police Officers on January 13, 2013, as alleged in this matter.

Plaintiff will present expert testimony regarding proper police policies applicable to police pursuits and the use of deadly force in the context of Plaintiff's claims, the number of bullets which were shot by each of the Pittsburgh Police Officers involved, and the trajectories of bullets which could be identified as piercing the outside of the automobile in which she was a passenger through Mr. Roy Bedard, Robert L. Levine, Ph.D., and Deborah C. Tator, M.S., respectively. Plaintiff will

also present the testimony of lay witnesses as to the facts, events, and occurrences which obtained at times material to Plaintiff's claims together with photographs and video tape will be presented to support the liability testimony and damage testimony.

Plaintiff submits that the facts outlined above will support the elements of her pendent state claims of Assault and Battery and Intentional Infliction of Emotional Distress against the individually named the Pittsburgh Police Officers and The City of Pittsburgh.

## II.  STATEMENT OF DAMAGES CLAIMED

Plaintiff sustained severe injuries to the right side of her face from a gunshot wound, and she has required surgeries to remove bone and bullet fragments from the areas about her right eye and brain, including but not limited to crainiotomy and a partial right frontal lobectomy and crainioplasty.  She has and continues to suffer from disfigurement, headaches, seizures, and a major depressive disorder as a result of those injuries.  These conditions, and continuing medical care, will tend to prevail and be permanent for her lifetime.

Damages claims are:  (1) Past medical expenses as set out by the health care providers, billings; (2) Future medical care and projected costs; (3) Past, present and future pain and suffering and humiliation; (4) Past, present and future emotional distress; (5) Legal fees, costs; (6) Punitive damages.

## III. WITNESS LIST

Lena Davenport
315 S. Avenue
Wilkinsburg PA 15221                    (Liability and damages)

Officer James Ilgenfritz
Homestead Police Department
140 9th Avenue
Homestead PA 15120                      (Liability)

Officer Ian Strang
Homestead Police Department
140 9th Avenue
Homestead PA 15120                      (Liability)

Chief Jeffrey DeSimone
Homestead Police Department
140 9th Avenue
Homestead PA 15120                      (Liability)

Officer Artzenberger
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Eric Baker
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Vonzale Boose
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Clifton Pugh
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

8

Officer Igor Boyko
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Cyprowski
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Paul Fleming
West Homestead Police Department
456 8th Ave
Homestead PA 15120                    (Liability)

Officer Thomas Gorecki
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Robert Harbaugh
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Chief Nathan Harper
City of Pittsburgh Police
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Rick Howe
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Calvin Kennedy
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Sergeant James Perry
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Stephen Matakovich
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Ray Rippole
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)


Officer Louis Schweitzer
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Bryan R. Sellers
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Sisak
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Daniel Soroczak
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Daniel Sullivan
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Officer Juan Terry
Pittsburgh Police Department
1203 Western Avenue
Pittsburgh, PA 15233                    (Liability)

Mbuptidem "Bodie" Essiet
824 Soles Street
McKeesport PA 15132
412 583 9398                            (Liability)

David Hyatt
1720 Noble Street
Pittsburgh PA 15215                     (Liability)

Sydnee Lucas
7675 Phoenix Dr. Apt 513
Houston TX 77030
2133 Ramsey Road
Monroeville PA 15146                    (Liability)
412 760 9272

Kelly Beck
(address to be supplemented)            (Liability)

Larry Nolan
724 255 2175
(address to be supplemented)            (Liability)

Ann Rigas
1304 Shelton Ave
Pittsburgh PA 15226                     (Liability)
412 531 2651

Kyhnroe Sanders
542 Ridge Avenue
E. Pittsburgh PA                        (Liability)
412 992 1068

Robert Tucker
307 Rose Avenue
Pittsburgh PA 15235                     (Liability)
412 626 0660

11

Kevin Pupo
333 Thistle Court
Pittsburgh PA 15239                    (Liability)
412 874 6140

Maurice Johnson
1304 Chelton Ave.
Pittsburgh PA 15226                    (Liability)
412 401 1731

Varun Rambala
161 Myler Street
Pittsburgh PA 15214                    (Liability)
412 909 1462

Shelby Dawn Helter
630 E. 8th Avenue
Tarentum PA 15084                      (Liability)
724 681 8315

Brittany Patterson
1639 Parkline Drive
Pittsburgh PA 15227                    (Liability)
814 330 0646

Stephen Feltovich
410 Cloverlea Street
Pittsburgh PA 15227                    (Liability)

Gary Thomas
Allegheny County 911 Administrative Office
400 N. Lexington Street
Pittsburgh PA 15208                    (Liability)


Any and all witnesses listed in OMI reports provided by Defendant City of Pittsburgh in Response to Plaintiff's discovery requests.

Plaintiff reserves the right to amend her list of witnesses up to and including the date of the Pre-Trial Conference and/or to call any witnesses that are listed on the Defendants' Pre-Trial Statement.

## Damage & Expert Witnesses

Mr. Roy Bedard
3057 Tipperary Drive
Tallahassee, FL 32309                    (Liability)
(Report requested and to be supplied upon receipt)

Robert L. Levine, Ph.D.
Allegheny County Crime Lab
1520 Penn Avenue
Pittsburgh, PA 15222                     (Liability)

Deborah C. Tator, M.S.
Division Forensic Labs
1520 Penn Ave.
Pittsburgh PA 15222                      (Liability)

Brian Jankowitz, M.D.
Mercy Professional Building
1350 Locust Street, S 300
Pittsburgh PA 15219                      (Damages)

Charles Kent, M.D.
1835 Forbes Avenue
Pittsburgh PA 15219                      (Damages)

Patrice A. Rao, M.D.
5215 Centre Avenue
Pittsburgh PA 15232                      (Damages)
(Report requested and to be supplied upon receipt)

Ghassan K. Bejjani, M.D.
5115 Centre Avenue, 3rd Floor
Pittsburgh PA 15232                      (Damages)
(Report requested and to be supplied upon receipt)

Records Custodian
UPMC Mercy Hospital
1400 Locust Street
Pittsburgh PA 15219                      (Damages)

13

Records Custodian
UPMC Shadyside Hospital
5230 Centre Avenue
Pittsburgh PA 15232                                    (Damages)

Kristina Curci
UPMC Mercy Hospital
1400 Locust Street
Pittsburgh PA 15219                                    (Damages)

Any and all witnesses identified in the parties' Answers to Interrogatories, Response to Request for
Production of Documents and/or Depositions.

## IV. DEPOSITION TESTIMONY

At this time Plaintiff has not identified any witnesses whose testimony will be presented by
deposition or used for any purpose other than impeachment.

## IV. EXHIBITS

1. Homestead Police Pursuit Policies

2. City of Pittsburgh Pursuit Policies

3. City of Pittsburgh Policies – Use of deadly force/shooting/vehicles

   3a. Pittsburgh Chief's Order #00-001 of January 3, 2000

   3b. Section 4.4 of Pittsburgh Chief's Order 12-7 of August 15, 2011

4. Allegheny County 911 Homestead Pursuit Recordings from 1-13-13

5. Allegheny County 911 Homestead Pursuit Transcript from 1-13-13

6. Illustration of pursuit route- Homestead to Pittsburgh (12th and E. Carson Streets)

7. Photographs of the vehicle taken at accident scene

8. Photographs of the vehicle taken at Pittsburgh Auto Squad Garage February 12, 2013

9. Ballistics Reports of Deborah Tator

14

10. Accident Crash Report authored by Officer Erika Jones

11. Videotape of pursuit passing 29th Street and East Carson Street

12. Videotape of pursuit passing 24th Street and East Carson Street

13. Videotape of pursuit passing 21st Street and East Carson Street

14. Videotape of pursuit passing 18th Street and East Carson Street

15. Videotape of pursuit showing Officer Gorecki shooting at side of vehicle immediately before and after it ceased moving

16. Lena Davenport Medical Records, UPMC Mercy Hospital

17. Lena Davenport Medical Records, UPMC Shadyside Hospital

18. Lena Davenport Medical Records, Dr. Patrice Rao, M.D.

19. Lena Davenport Summary of Medical Expenses

20. The deposition of Defendant Schweitzer and/or relevant portions thereof and/or any exhibits attached thereto

21. The deposition of Defendant Matakovich and/or relevant portions thereof and/or any exhibits attached thereto

22. The deposition of Defendant Kennedy and/or relevant portions thereof and/or any exhibits attached thereto

23. The deposition of Defendant Gorecki and/or relevant portions thereof and/or any exhibits attached thereto

24. The deposition of Defendant Strang and/or relevant portions thereof and/or any exhibits attached thereto

25. The deposition of Defendant Ilgenfritz and/or relevant portions thereof and/or any exhibits

    attached thereto

26. The deposition of Defendant DeSimone and/or relevant portions thereof and/or any exhibits

    attached thereto

27. The deposition of Robert S. Levine and/or relevant portions thereof and/or any exhibits

    attached thereto

28. The deposition of Sergeant James Perry and/or relevant portions thereof and/or any exhibits

    attached thereto

29. Weapons Discharge Report Defendant Schweitzer

30. Weapons Discharge Report Defendant Matakovich

31. Weapons Discharge Report Defendant Kennedy

32. Weapons Discharge Report Defendant Gorecki

33. Vehicle pursuit reports submitted by Homestead Borough to the Pennsylvania State Police

    pertaining to pursuits which occurred from 2009 to January 13, 2013.

Plaintiff reserves the right to supplement this listing with other documents, including but not limited
to any and all documents identified in the parties' Answers to Interrogatories, Response to Request
for Production of Documents and/or Depositions.

Respectfully submitted,

LEWIS, LEWIS & REILLY

By: _____

J. Kerrington Lewis, Esquire
PA. I.D. #15575
1040 Fifth Avenue
Pittsburgh, PA 15219
(412) 391-0818
*Counsel for Plaintiff*

16

UPMC Shadyside
Neurosurgery
Operative Report

PATIENT NAME: DAVENPORT, LENA
MRN: 785511730
ACCOUNT #: 0003987304044
DATE OF BIRTH: 01/02/1964
ROOM: I6W/W643
SURGEON NAME: GHASSAN BEJJANI
ATTENDING PHYSICIAN: GHASSAN K BEJJANI
SURGERY DATE: 02/24/2014
ADMISSION DATE: 02/24/2014
DISCHARGE DATE: 02/25/2014

SURGEON: Ghassan K. Bejjani, M.D.

ASSISTANT: Douglas Clayton, PA-C.

PREOPERATIVE DIAGNOSIS: Right frontal orbital defect.

POSTOPERATIVE DIAGNOSIS: Right frontal orbital defect.

PROCEDURES: Right frontal orbital cranioplasty using custom made OsteoMed mesh.

ANESTHESIA: Endotracheal.

"I understand that section 1842 (b)(7)(D) of the Social Security Act generally prohibits Medicare physician fee schedule payment for the services of assistants at surgery in teaching hospitals when qualified residents are available to furnish such services. I certify that the services for which payment is claimed were medically necessary and that no qualified resident was available to perform the services. I further understand that these services are subject to post payment review by the Medicare carrier."

INDICATIONS: The patient is a 50-year-old lady who had underwent a gunshot wound to the orbit. The patient had a cranial defect in the cranial orbital area on the right frontal orbital side for which she wished to have cranioplasty done. The patient was made aware that there is no guarantee of success with surgery and various complications can happen, risk of stroke, coma, death, paralysis, PE, DVT, infection, fluid leak, worsening symptoms, death, coma, paralysis, among others. No _____ cosmetically she may have worsening cosmetic effect among others. No guarantees were made.

DESCRIPTION OF PROCEDURE: The patient was taken to the recovery room, placed on the table in supine position on a horseshoe. The hair was clipped. The area was adequately prepped and draped. Then incision was made, and defect was dissected and exposed all the way around in the frontal orbital area. Once that was exposed, the custom made cranioplasty mesh was then placed and secured using titanium miniplates and screws. Once that was done, closure done using 2-0 Polysorb for the galea and nylon for the skin. Dressing applied. X-ray confirmed good condition.

PATIENT NAME: DAVENPORT, LENA
ACCOUNT # 0003987304044
ADMISSION DATE: 02/24/2014
SURGERY DATE: 02/24/2014
Page 2 of 2

FEB 2 6 2014

Electronically authenticated at end of document.

Dictated by: Ghassan K Bejjani, M.D.

D: 02/25/2014 01:07PM, GKB T: 02/25/2014 02:49PM, in R:
Confirmation # 1577898/ Document ID: 4002803

C12

\*U\*P\*M\*C\* DAVENPORT,LENA Acct#:0540018783013
UPMC Mercy
Neurosurgery
Operative Report

PATIENT NAME:  DAVENPORT, LENA
MRN:   970671160
ACCOUNT #:  0540018783013
ROOM #:  U4F1/4220
DATE OF BIRTH:  01/02/1964
SURGEON NAME:  BRIAN JANKOWITZ
ATTENDING PHYSICIAN:  JENNY ZIEMBICKI
SURGERY DATE:  01/13/2013
ADMISSION DATE:  01/13/2013
DISCHARGE DATE:

DATE OF SERVICE:  January 13, 2013.

SURGEON:  Brian T. Jankowitz, M.D.

LOCATION:  UPMC Mercy Hospital.

DIAGNOSIS:  GUNSHOT WOUND TO THE HEAD.

Name of PROCEDUREs PERFORMED:
1.   PLACEMENT OF LEFT-SIDED EXTERNAL VENTRICULAR DRAIN THROUGH A TWIST
DRILL CRANIOSTOMY.
2.   RIGHT-SIDED IRRIGATION AND DEBRIDEMENT OF A 6 CM COMPLEX WOUND WHERE A
GUNSHOT EXITED.
3.   RIGHT FRONTAL LOBECTOMY.
4.   REPAIR OF A 6 CM COMPLEX SKIN LACERATION.

BRIEF HISTORY:  Lena Davenport is a middle-aged female who was shot in the
head.  The bullet appears to have entered her right orbit and exited
through the right side of her skull.  CT scan revealed extensive contusion
and bone fragments within the right frontal lobe causing an
intraventricular hemorrhage.  The patient was brought emergently to the
operating room for repair of this complex incision with brain actually
extruding from the incision.  We were not able to contact the family for
consent due to the emergent nature of the procedure.

DESCRIPTION OF PROCEDURE:  Lena Davenport was brought into the operating
room at UPMC Mercy Hospital already intubated.  General anesthesia was
maintained by members of the Anesthesiology staff.  Prior to skin incision,
she was given 2 grams of Ancef and 1 gram of Dilantin.  I performed a
time-out according to UPMC Mercy Hospital protocol.  The entirety of her
head was clipped with an electric razor and then scrubbed with
chlorhexidine gluconate sponge.  The patient was placed supine in a
horseshoe headholder.  A tarsorrhaphy was performed in the left eye in the
advent that we had perform a bicoronal craniotomy with extensive skin flap
over the eye.  The right eye was left alone with plans for Ophthalmology to
assess the right eye.  The head was then sterilized with a chlorhexidine
gluconate sponge stick and then prepped and draped in normal sterile
fashion.  At this point, I opened the complex incision over the right
orbit, which was approximately 6 cm long, to expose the large hole in the

*U*P*M*C* DAVENPORT,LENA Acct#:0540018783013

bone with actively extruding brain clearly under pressure.  I copiously
irrigated and debrided the bone to remove all bone fragments that were
obviously in the brain.  I then performed a partial frontal lobectomy to
create space in this contused brain.  After obtaining meticulous
hemostasis, I again removed all visual visible bone fragments.  I now
placed an inlay Duragen duraplasty loop within the exposed dura and placed
a #7 JP drain in the gunshot wound cavity.  I tunneled this posteriorly and
affixed it to the skin with a 3-0 nylon suture.  I then debrided the skin
edges and reapproximated them with 2-0 Polysorb in the subcutaneous tissue
and interrupted vertical mattress 3-0 nylon sutures in the skin.

I now turned my attention to placing an external ventricular drain.  A 2 cm
transverse incision was created over coronal suture 11 cm posterior of the
nasion and 3 cm off the midline on the left side of his scalp.  A 1 cm
diameter bur hole was created down to the dura.  The dura was coagulated
and opened, as well as the pia.  An external ventricular drain was passed
towards the ventricle.  I encountered brisk clear CSF when first passed.
This was tunneled posteriorly and subcutaneously and affixed to the skin
with 3-0 nylon.  The incision was copiously irrigated.  The galea was
closed with a 2-0 Polysorb suture followed by staples in the skin.  The
external ventricular drain was now hooked up to a drainage bag.  At this
point, my cosurgeon Dr. Kent came in to evaluate and debride the orbit.

ATTESTATION STATEMENT:  Please note, I was present and scrubbed for the
entire procedure and performed the entire procedure other than the orbital
surgery myself.

Electronically authenticated at end of document.

Dictated by:  Brian T Jankowitz, M.D.

D:  01/14/2013 10:02PM, BTJ T:  01/15/2013 12:05PM, mrb  R:
Confirmation # 520789/ Document ID: 1410639
Authenticated by BRIAN T JANKOWITZ, MD On 01/15/2013 01:15:53 PM

```
*U*P*M*C* DAVENPORT,LENA Acct#:0540018783013
UPMC Mercy
Ophthalmologic Surgery
Operative Report

PATIENT NAME:  DAVENPORT, LENA
MRN:   970671160
ACCOUNT #:   0540018783013
ROOM #:  U4F1/4220
DATE OF BIRTH:  01/02/1964
SURGEON NAME:   CHARLES KENT
ATTENDING PHYSICIAN:   JENNY ZIEMBICKI
SURGERY DATE:  01/13/2013
ADMISSION DATE:  01/13/2013
DISCHARGE DATE:
```

PREOPERATIVE DIAGNOSIS:
1.   RULE OUT RUPTURED GLOBE, PERIORBITAL TRAUMA.
2.   COMPLICATED LACERATIONS TO THE UPPER AND LOWER EYELID INVOLVING THE
CANALICULUS.
3.   ORBITAL FRACTURES, LATERAL, INFERIOR, AND SUPERIOR WALLS.

POSTOPERATIVE DIAGNOSIS:
1.   STATUS POST ENUCLEATION.
2.   COMPLICATED LACERATIONS TO THE UPPER AND LOWER EYELID INVOLVING THE
CANALICULUS.
3.   ORBITAL FRACTURES, LATERAL, INFERIOR, AND SUPERIOR WALLS.

PROCEDURE PERFORMED:
1.   EXPLORATION OF THE ORBIT.
2.   REPAIR OF COMPLEX LACERATION OF THE EYELIDS, UPPER AND LOWER.
3.   REMOVAL OF FOREIGN BODY OF THE ORBIT.

ANESTHESIA:  General.

INDICATION FOR PROCEDURE:  This middle-aged woman is status post gunshot
wound to the right orbit and frontal lobe area.

DESCRIPTION OF PROCEDURE:  The patient's right side was identified as the
surgical site.  She was prepped and draped in a sterile fashion.  I placed
a lid speculum to retract the upper eyelids to inspect the orbital tissues.
There was a drain from the frontal lobe area present in the lateral orbit.
I was able to identify the upper and lower eyelids medially that were
lacerated at the canaliculus and the lower eyelid and upper eyelid
laterally were also disinserted from the lateral canthus.  There were
multiple comminuted free-floating pieces of bone throughout the orbit as
well as residual metallic fragments from the gunshot.  I removed a
significant portion of these and continued to explore the orbital tissue
looking forward the supposed ruptured globe.  What I discovered was that
she had an orbital implant and must have had a previous enucleation or
evisceration.   I removed the orbital implant due to the significant risk
of infection.  Once this was removed, I was unable to close the open wounds
from the orbit to the brain.  I closed the conjunctival tissues and the
overlying orbital tissue with interrupted and running sutures of 6-0
Vicryl.  I then repaired the eyelids.  The upper eyelid had several

*U*P*M*C* DAVENPORT,LENA Acct#:0540018783013
full-thickness lacerations that were repaired with a 6-0 Vicryl suture.
Medially I used a 5-0 nylon to reanastomose the upper and lower eyelids to
the medial canthal region.  Multiple interrupted sutures of 5-0 nylon were
used to close the lacerations of the lower eyelids and laterally I also had
to resuspend the lower eyelid with a 5-0 Vicryl suture and closed some of
the wounds with running sutures of 6-0 fast-absorbing plain gut.   There
were no complications.  Estimated blood loss was minimal.  The patient
returned to Recovery Room in stable condition.

---

Electronically authenticated at end of document.

Dictated by:  Charles J Kent, M.D.

D:  01/13/2013 07:54AM, CJK T:  01/14/2013 06:24AM, eb  R:
Confirmation # 516885/ Document ID: 1400465
Authenticated by CHARLES J. KENT,  MD On 02/06/2013 02:39:24 PM

There was a request for the Firearms Section of the ACOME to provide assistance in an Officer Involved Shooting Incident (OIS) that occurred in the South Side of the City of Pittsburgh. The incident date was reportedly on January 13, 2013 and the request date was February 13, 2013.

The vehicle had been moved to the Pittsburgh Auto Squad garage. Detective B. Kareer of the Pittsburgh Mobile Crime Unit (PGH MCU) photographed the vehicle as it was being processed. Pittsburgh Sgt. T. Westwood and other Pittsburgh detectives were also present.

The vehicle was a green four door Buick with a PA Reg. plate of JCB6199. The vehicle had previously been processed, presumably by the PGH MCU. Labels had been placed near the bullet holes and given numbers. Bullet hole #1 was BH#1 to indicate the first hole documented. It is presumed that the numbering had been for notes only and not to indicate the order in which the shots were fired.

BH#1 was on the rear passenger door. Measurements were taken. The height of the "Pinch Point" was approximately 1 foot 4 ½ inches Above Ground Level (AGL). The angle into the door was left to right and downward. The inside back passenger door panel was opened and a bullet was removed from the inside cavity of the door.

BH#2 was on the front passenger door. The hole was nearly circular. It was noticed that an entrance bullet hole was on the front console between the front passenger seat and front driver's seat. An exit hole was on the driver's side of the console. The holes in the console approximately aligned with the BH#2 possibly indicating that the bullet that produced BH#2 also produced the holes in the console. BH#2 was 2 feet 1 ½ inches AGL.

The passenger side front vent and front window had been shattered. There were no noticeable radial fractures in the remaining glass of those two windows.

BH#3 and BH#4 were on the front hood. Measurements of the two holes were taken. There were no defined exit holes in the hood area. This may be an indication that the holes were produced when the hood was not damaged. BH#3 was at a lesser angle than BH#4. BH#3 was on the left side of the hood and BH#4 was on the right side of the hood. Both holes were angled toward the driver's position and were from the left of the vehicle (when facing the front of the vehicle).

BH#5 was on the plastic portion of the front bumper closer to the passenger side of the bumper.

Not previously documented was damage to the front driver's side vent window. Radial fracture lines were observed on the window. The shape of the radial lines indicates that a projectile struck the vent window. The vent window was then covered in clear tape (both sides) and removed from the door.

Also not previously documented was damage to the deployed airbag. An entrance and an exit bullet hole were observed on the airbag. Bullet "wipe" indicated that the entrance side would have been on

driver's side of the car. The airbag was removed. The plastic housing for the airbag was examined. No bullet holes were observed on the airbag housing. This indicates that the airbag had been deployed when the bullet traveled through the airbag.


Respectfully submitted


Robert T. Levine, Ph.D.

Consulting Criminalist

KARL E. WILLIAMS, M.D., M.P.H.
MEDICAL EXAMINER
ROBERT M. HUSTON
LABORATORY DIRECTOR
1520 Penn Avenue
Pittsburgh, Pennsylvania 15222
Phone (412) 350-4800   Fax (412) 350-3861

| NEW | X |
|---|---|
| ADD'L: | 13LAB00433 |

**Evidence Submission Form**

**PLEASE REFER TO THIS LABORATORY NUMBER WHEN MAKING INQUIRY.**

**Laboratory Case Type:**
OFFICER INVOLVED SHOOTING
**Date of Offense/Discovery:**
01/13/2013
**Location:**
1316 E CARSON ST

Agency Case Number: 13007611

| | Race | Sex |
|---|---|---|
| (S) DONALD BURRIS | | |

| Victims(s): (First, MI, Last Name) 1 B | Race | Sex |
|---|---|---|

**Submitting Agency:**
PGH PD - NV

**13LAB00433**
Sub# 1 Received (1/14/2013)
PGH PD - NV
Case# 13007611

**Case Officer:**
SGT R. GRIFFIN #2981

**Description of Items Submitted:**

| Lab Item # | Dept. Item # | Description | Service Requests |
|---|---|---|---|
| 1 | | One sealed envelope LTC: Firearm  GLOCK 22 .40 CAL SER# KYY362 US / GLOCK MAGAZINE / 12 .40 CAL BULLETS | Toolmark Comparison, Firearms Testing |
| 2 | | One sealed envelope LTC: Firearm  GLOCK 22 .40 CAL SER# DTZ018US US / GLOCK MAGAZINE / 12 .40 CAL BULLETS | Firearms Testing, Toolmark Comparison |
| 3 | | One sealed envelope LTC: Firearm  GLOCK 22 .40 CAL SER# HUR566 / GLOCK MAGAZINE / 14 .40 CAL BULLETS | Firearms Testing, Toolmark Comparison |
| 4 | | One sealed envelope LTC: Firearm  GLOCK 23 .40 CAL SER# PXG-700US / GLOCK MAGAZINE / 12 .40 CAL BULLETS | Toolmark Comparison, Firearms Testing |
| 5 | | One sealed envelope LTC: Firearm  GLOCK 22 .40 CAL SER# KMH229 / GLOCK MAGAZINE / 8 .40 CAL BULLETS | Firearms Testing, Toolmark Comparison |

**Comments:**

A. TICE #3458

Lona A. Daley - Forensic Evidence Specialist

01/14/2013     9:28

COP000000197

P-1-13

KARL E. WILLIAMS, M.D., M.P.H.
MEDICAL EXAMINER
ROBERT M. HUSTON
LABORATORY DIRECTOR
1520 Penn Avenue
Pittsburgh, Pennsylvania 15222
Phone (412) 350-4800   Fax (412) 350-3861

| NEW | |
|---|---|
| ADD'L: Submission #: 4 | 13LAB00433 |

**Evidence Submission Form**

**PLEASE REFER TO THIS LABORATORY NUMBER WHEN MAKING INQUIRY.**

**Laboratory Case Type:**
OFFICER INVOLVED SHOOTING
**Date of Offense/Discovery:**
01/13/2013
**Location:**
1316 E CARSON ST

Agency Case Number: 13007611

| | Race | Sex |
|---|---|---|
| (S) LENA DAVENPORT | | |
| (S) DONALD BURRIS | | |
| | | |
| Victims(s): (First, MI, Last Name) 1 B | Race | Sex |

**Submitting Agency:**
PGH PD - HOM

**13LAB00433**
Sub# 4 Received (1/16/2013)
PGH PD - HOM
Case# 13007611

**Case Officer:**
DET. V. BOOSE

**Description of Items Submitted:**

| Lab Item # | Dept. Item # | Description | Service Requests |
|---|---|---|---|
| 9 | | One sealed envelope LTC: Dustfall EX 1-15 - DAMAGED FIRED CASINGS FEDERAL 40 S&W / DAMAGED FIRED BULLETS / DAMAGED FIRED BULLET / COPPER JACKET FRAGMENT / COPPER JACKET / FIRED CASINGS FEDERAL 40 S&W | Toolmark Comparison, Firearms Testing |

**Comments:**

ANDY TICE

Lona A. Daley - Forensic Evidence Specialist

01/16/2013     9:23

Submission Date and Time

COP000000198



KARL E. WILLIAMS, M.D., M.P.H.
MEDICAL EXAMINER
ROBERT M. HUSTON
LABORATORY DIRECTOR
1520 Penn Avenue
Pittsburgh, Pennsylvania 15222
Phone (412) 350-4800    Fax (412) 350-3861

P-1-13

| | |
|---|---|
| NEW | |
| ADD'L: Submission #: 5 | 13LAB00433 |

**Evidence Submission Form**

**PLEASE REFER TO THIS LABORATORY NUMBER WHEN MAKING INQUIRY.**

**Laboratory Case Type:**
OFFICER INVOLVED SHOOTING
**Date of Offense/Discovery:**
01/13/2013
**Location:**
1316 E CARSON ST

Agency Case Number: 13007611

| | Race | Sex |
|---|---|---|
| (S) LENA DAVENPORT | | |
| (S) DONALD BURRIS | | |
| | | |
| Victim(s): (First, MI, Last Name) L SCHWEITZER | Race | Sex |

R RIPPOLE

I B

**Submitting Agency:**
PGH PD - HOM

**13LAB00433**
Sub# 5 Received (1/16/2013)
PGH PD - HOM
Case# 13007611

**Case Officer:**

_____

**Description of Items Submitted:**

| Lab Item # | Dept. Item # | Description | Service Requests |
|---|---|---|---|
| 10 | | One sealed envelope LTC: Carbon Stub Kit  EX GSR1 - GUNSHOT RESIDUE KIT IDBN: BURRIS, DONALD | Gun Shot Residue Analysis |

**Comments:**

_____   _____   01/16/2013    9:27

ANDY TICE    Lona A. Daley - Forensic Evidence Specialist

COP000000199

KARL E. WILLIAMS, M.D., M.P.H.
MEDICAL EXAMINER
ROBERT M. HUSTON
LABORATORY DIRECTOR
1520 Penn Avenue
Pittsburgh, Pennsylvania 15222
Phone (412) 350-4800   Fax (412) 350-3861

P - 1 - 13

| NEW | |
|---|---|
| ADD'L:<br>Submission #: 6 | 13LAB00433 |

### Evidence Submission Form

**PLEASE REFER TO THIS LABORATORY NUMBER WHEN MAKING INQUIRY.**

**Laboratory Case Type:**
OFFICER INVOLVED SHOOTING
**Date of Offense/Discovery:**
01/13/2013
**Location:**
1316 E CARSON ST

Agency Case Number: 13007611

| | Race | Sex |
|---|---|---|
| (S) LENA  DAVENPORT | | |
| (S) DONALD  BURRIS G5836154 | | |
| | | |
| Victim(s): (First, MI, Last Name) | Race | Sex |
| L SCHWEITZER | | |

**Submitting Agency:**
PGH PD - HOM

R RIPPOLE

**Case Officer:**
C. PUGH  PGH HOM

**ᵀᴰ 13LAB00433**
Sub# 6 Received (2/25/2013)
PGH PD - HOM
Case# 13007611

**Description of Items Submitted:**

| Lab Item # | Dept. Item # | Description | Service Requests |
|---|---|---|---|
| 11 | | One sealed envelope LTC:  LTC: EX1 BULLET | Firearms Testing, Manual<br>Open case file search |
| 12 | | paper bag  LTC: EX2 DRIVER AIRBAG | Firearms Testing |
| 13 | | cardboard box  LTC: EX3 DRIVER VENT WINDOW<br>FROM 1997 BUICK PA: JCR6199 | Firearms Testing |
| 14 | | One sealed envelope LTC: CD of Case Documentaion<br>LTC: DVD OF IMAGES | |

**Comments:**

B COVINGTON

Erin Brentin - Forensic Evidence Specialist

02/25/2013     10:42

COP000000200

KARL E. WILLIAMS M.D., M.P.H., MEDICAL EXAMINER
## DIVISION OF FORENSIC LABORATORIES
ROBERT M. HUSTON, LABORATORY DIRECTOR
1520 Penn Avenue • Pittsburgh, PA 15222        Phone (412) 350-4800 • Fax (412) 350-3861
www.alleghenycounty.us

# CONFIDENTIAL

**Submitted herewith please find the confidential Report of Laboratory Findings of this
laboratory's examination conducted in connection with the following case:**

**Lab Case No:**         13LAB00433 Report #1: OIS         **Report Date:** January 22, 2013
**Case Name:**           I B

**Agency**               **Agency Case No.**                **Case Officer**
PGH PD - HOM             (2013) 007611                      DET. V. BOOSE

                                                            **CC:** DDA M. TRANQUILLI

**Victim(s)**
I B

**Suspect(s)**                          **OTN**
DONALD BURRIS

The Crime Lab User Fee:        $1,375.00

## IMPORTANT NOTICE

**The Division of Laboratories must be notified when an OTN becomes
available for the suspect(s) / defendant(s) in this case.
Please call (412) 350-4800 or FAX (412) 350-3861 this information immediately.**

* * * * * * *

**Unless special arrangements have been made, THE EVIDENCE MUST BE REMOVED
WITHIN 10 DAYS of the above date or DISPOSAL OF THE EVIDENCE MAY RESULT.**

Report Page 1 of 6                                                    Initials

COP000000201



KARL E. WILLIAMS M.D., M.P.H., MEDICAL EXAMINER
DIVISION OF FORENSIC LABORATORIES
ROBERT M. HUSTON, LABORATORY DIRECTOR
1520 Penn Avenue • Pittsburgh, PA 15222     Phone (412) 350-4800 • Fax (412) 350-3861

ASCLD/LAB ACCREDITED LAB
SINCE 2008

## REPORT OF LABORATORY FINDINGS

**Agency Case No:**  (2013) 007611                          **Laboratory Case No:**  13LAB00433
**Case Name:**  I B                                                                              Report #1

### FIREARMS & TOOLMARKS SECTION REPORT

**Item**

**1A**   **40 S&W caliber Glock pistol, serial number KYY362, reportedly carried by P.O. Schweitzer**

The firearm described above was test fired and found to be in good operating condition.

A trigger pull of approximately 9 1/2 pounds was needed to discharge the double action pistol.

The test bullets discharged from the pistol had a classification of six polygonal lands and grooves with a right-hand twist.

**1B**   **One magazine**

The magazine, which had a capacity to hold fifteen cartridges, was used to test fire the Item 1A pistol.

**1C**   **Twelve 40 S&W caliber "FEDERAL" cartridges**

Two of the twelve cartridges submitted were used to test fire the Item 1A pistol.

**2A**   **40 S&W caliber Glock pistol, serial number DTZ018US, reportedly carried by Sgt. Matakovich**

The firearm described above was test fired and found to be in good operating condition.

A trigger pull of approximately 10 pounds was needed to discharge the double action pistol.

The test bullets discharged from the pistol had a classification of six polygonal lands and grooves with a right-hand twist.

**2B**   **One magazine**

The magazine, which had a capacity to hold fifteen cartridges, was used to test fire the Item 2A pistol.

Initials

COP000000202

KARL E. WILLIAMS M.D., M.P.H., MEDICAL EXAMINER
## DIVISION OF FORENSIC LABORATORIES
ROBERT M. HUSTON, LABORATORY DIRECTOR
1520 Penn Avenue • Pittsburgh, PA 15222          Phone (412) 350-4800 • Fax (412) 350-3861

ASCLD/LAB ACCREDITED LAB
SINCE 2008

## REPORT OF LABORATORY FINDINGS

**Agency Case No:** (2013) 007611                    **Laboratory Case No:**   13LAB00433
**Case Name:** I B                                                                          Report #1

## FIREARMS & TOOLMARKS SECTION REPORT

**2C      Twelve 40 S&W caliber "FEDERAL" cartridges**

Two of the twelve cartridges submitted were used to test fire the Item 2A pistol.

**3A      40 S&W caliber Glock pistol, serial number HUR566, reportedly carried by P.O. Gorecki**

The firearm described above was test fired and found to be in good operating condition.

A trigger pull of approximately 9 1/4 pounds was needed to discharge the double action pistol.

The test bullets discharged from the pistol had a classification of six polygonal lands and grooves with a right-hand twist.

**3B      One magazine**

The magazine, which had a capacity to hold fifteen cartridges, was used to test fire the Item 3A pistol.

**3C      Fourteen 40 S&W caliber "FEDERAL" cartridges**

Two of the fourteen cartridges submitted were used to test fire the Item 3A pistol.

**4A      40 S&W caliber Glock pistol, serial number PXG700, reportedly carried by Det. Kennedy**

The firearm described above was test fired and found to be in good operating condition.

A trigger pull of approximately 11 pounds was needed to discharge the double action pistol.

The test bullets discharged from the pistol had a classification of six polygonal lands and grooves with a right-hand twist.

**4B      One magazine**

The magazine, which had a capacity to hold thirteen cartridges, was used to test fire the Item 4A pistol.

**Report Page 3 of 6**

Initials

COP000000203

KARL E. WILLIAMS M.D., M.P.H., MEDICAL EXAMINER
**DIVISION OF FORENSIC LABORATORIES**
ROBERT M. HUSTON, LABORATORY DIRECTOR
1520 Penn Avenue • Pittsburgh, PA 15222    Phone (412) 350-4800 • Fax (412) 350-3861

ASCLD/LAB ACCREDITED LAB
SINCE 2008

## REPORT OF LABORATORY FINDINGS

| | | | |
|---|---|---|---|
| **Agency Case No:** | (2013) 007611 | **Laboratory Case No:** | 13LAB00433 |
| **Case Name:** | I B | | Report #1 |

### FIREARMS & TOOLMARKS SECTION REPORT

**4C**    **Twelve 40 S&W caliber "FEDERAL" cartridges**

Two of the twelve cartridges submitted were used to test fire the Item 4A pistol.

**5A**    **40 S&W caliber Glock pistol, serial number KMH229, reportedly carried by P. O. Boyko**

The firearm described above was test fired and found to be in good operating condition.

A trigger pull of approximately 10 3/4 pounds was needed to discharge the double action pistol.

The test bullets discharged from the pistol had a classification of six polygonal lands and grooves with a right-hand twist.

**5B**    **One magazine**

The magazine had a capacity to hold fifteen cartridges.

The magazine was used to test fire the Item 5A pistol.

**5C**    **Eight 40 S&W caliber "FEDERAL" cartridges**

Two of the eight cartridges submitted were used to test fire the Item 5A pistol.

**9A**    **Three spent 40 S&W caliber "FEDERAL" cartridge cases (Pgh. Ex. 3, 4, and 5)**

The three spent 40 S&W caliber cartridge cases matched the test cartridge cases of and were discharged by the Item 2A Glock pistol, serial number DTZ018US, reportedly carried by Sgt. Matakovich.

**9B**    **Two spent 40 S&W caliber "FEDERAL" cartridge cases (Pgh. Ex. 6 and 15)**

The two spent 40 S&W caliber cartridge cases matched the test cartridge cases of and were discharged by the Item 3A Glock pistol, serial number HUR566, reportedly carried by P.O. Gorecki.

Initials

COP000000204



KARL E. WILLIAMS M.D., M.P.H., MEDICAL EXAMINER
**DIVISION OF FORENSIC LABORATORIES**
ROBERT M. HUSTON, LABORATORY DIRECTOR
1520 Penn Avenue • Pittsburgh, PA 15222        Phone (412) 350-4800 • Fax (412) 350-3861

ASCLD/LAB ACCREDITED LAB
SINCE 2008

## REPORT OF LABORATORY FINDINGS

| | | | |
|---|---|---|---|
| **Agency Case No:** | (2013) 007611 | **Laboratory Case No:** | 13LAB00433 |
| **Case Name:** | I B | | Report #1 |

### FIREARMS & TOOLMARKS SECTION REPORT

**9C** *Burst 6 spent* **Six spent 40 S&W caliber "FEDERAL" cartridge cases (Pgh. Ex. 7 to 12)**

The six spent 40 S&W caliber cartridge cases matched the test cartridge cases of and were discharged by the Item 5A Glock pistol, serial number KMH229, reportedly carried by P.O. Boyko.

**9D** **One jacket fragment (Pgh. Ex. 2) and one jacket (Pgh. Ex. 14), each to a spent 40 caliber partially jacketed bullet**

The bullet jacket fragment and jacket described above weighed 27.6 grains and 49.9 grains, respectively, and had a classification of six polygonal lands and grooves with a right-hand twist.

The items were poorly marked, damaged, and had limited areas suitable for comparison purposes.

The items matched the test bullets of and were discharged from the Item 2A Glock pistol, serial number DTZ018US, reportedly carried by Sgt. Matakovich.

**9E** **One fragment to a spent 40 caliber partially jacketed bullet (Pgh. Ex. 1)**
**6** **One spent 40 caliber partially jacketed bullet, reportedly recovered from Donald Burris at hospital**
**8** **One spent 40 caliber partially jacketed bullet, reportedly recovered from "rear drivers side passenger door" on 1/15/2013**

The bullet fragment and two bullets described above weighed 137.2, 180.0, and 170.4 grains, respectively, and had a classification of six polygonal lands and grooves with a right-hand twist.

The three items were poorly marked, damaged, and had limited areas suitable for comparison purposes.

The three items had the same class characteristics as the test bullets discharged from the above Glock pistols (Items 1A, 2A, 3A, 4A, and 5A); however, no identifications or eliminations were made.

Initials

COP000000205



KARL E. WILLIAMS M.D., M.P.H., MEDICAL EXAMINER
**DIVISION OF FORENSIC LABORATORIES**
ROBERT M. HUSTON, LABORATORY DIRECTOR
1520 Penn Avenue • Pittsburgh, PA 15222     Phone (412) 350-4800 • Fax (412) 350-3861

ASCLD/LAB ACCREDITED LAB
SINCE 2008

## REPORT OF LABORATORY FINDINGS

**Agency Case No:**  (2013) 007611                    **Laboratory Case No:**   13LAB00433
**Case Name:**   I B                                                          Report #1

## FIREARMS & TOOLMARKS SECTION REPORT

**9F**     **One lead core fragment (Pgh. Ex. 13)**

The lead core fragment weighed 118.6 grains.

The fragment was not suitable for identification purposes.

Respectfully submitted,

*Deborah C. Tator*

Deborah C. Tator, M.S.
Scientist

The results, conclusions, interpretations and/or opinions in this Report of Laboratory Findings are those of the above signed author.

Initials

COP000000206



KARL E. WILLIAMS, M.D. MEDICAL EXAMINER
ROBERT M. HUSTON, LABORATORY DIRECTOR
1520 Penn Avenue Pittsburgh, Pennsylvania 15222
Phone (412) 350-3734   Fax (412) 350-3861

# Evidence Return Receipt

D - 284

**Returned To**    city property room
                   tina koral
**Date / Time**    1/16/2013    08:53:03

**Items Transferred**

| Lab Case | Item | Description / Source | Agency CCR |
|---|---|---|---|
| 13LAB00433 | 1 | One sealed envelope LTC: Firearm  GLOCK 22 .40 CAL SER# (KYY362 US) GLOCK MAGAZINE / 12 .40 CAL BULLETS | 13007611 |
| Sch weitezeR | | Firearm  40 S&W caliber Glock pistol, serial number KYY362 | 13007611 |
| | | Magazine  One magazine | 13007611 |
| | | sealed yellow envelope  Ammunition (live rounds)  Twelve 40 S&W caliber "FEDERAL" cartridges | 13007611 |
| 13LAB00433 | 2 | One sealed envelope LTC: Firearm  GLOCK 22 .40 CAL SER# DTZ018US US / GLOCK MAGAZINE / 12 .40 CAL BULLETS | 13007611 |
| MATAKovich | | Firearm  40 S&W caliber Glock pistol, serial number (DTZ018US) | 13007611 |
| | | Magazine  One magazine | 13007611 |
| | | sealed yellow envelope  Ammunition (live rounds)  Twelve 40 S&W caliber "FEDERAL" cartridges | 13007611 |
| 13LAB00433 | 3 | One sealed envelope LTC: Firearm  GLOCK 22 .40 CAL SER# (HUR566) / GLOCK MAGAZINE / 14 .40 CAL BULLETS | 13007611 |
| GoReckI | | Firearm  40 S&W caliber Glock pistol, serial number HUR566 | 13007611 |
| | | Magazine  One magazine | 13007611 |
| | | sealed yellow envelope  Ammunition (live rounds)  Fouteen 40 S&W caliber "FEDERAL" cartridges | 13007611 |
| 13LAB00433 | 4 | One sealed envelope LTC: Firearm  GLOCK 23 .40 CAL SER# (PXG-700US) GLOCK MAGAZINE / 12 .40 CAL BULLETS | 13007611 |
| KenneDy | | Firearm  40 S&W caliber Glock pistol, serial number PXG700 | 13007611 |
| | | Magazine  One magazine | 13007611 |
| | | sealed yellow envelope  Ammunition (live rounds)  Twelve 40 S&W caliber "FEDERAL" cartridges | 13007611 |
| 13LAB00433 | 5 | One sealed envelope LTC: Firearm  GLOCK 22 .40 CAL SER# KMH229 / GLOCK MAGAZINE / 8 .40 CAL BULLETS | 13007611 |
| Boyko | | Firearm  40 S&W caliber Glock pistol, serial number KMH229 | 13007611 |
| | | Magazine  One magazine | 13007611 |
| | | sealed yellow envelope  Ammunition (live rounds)  Eight 40 S&W caliber "FEDERAL" cartridges | 13007611 |

**Released By**                              **Released To**



CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the within Plaintiff's PreTrial Statement has been served on this 28th day of April, 2014, upon all parties, either individually or through counsel, by:

      \_\_\_\_\_ Hand-Delivery
      \_\_X\_\_ First-Class Mail, Postage Pre-Paid
      \_\_\_\_\_ Certified Mail-Return Receipt Requested
      \_\_\_\_\_ Facsimile Transmission

at the following address:

    **John M. Noble, Esquire**
    **Noble Mediation, LLC**
    **378 Donohoe Road**
    **Greensburg, PA 15601**

    **Michael E. Kennedy**
    **Assistant City Solicitor**
    **City of Pittsburgh**
    **313 City-County Building**
    **414 Grant Street**
    **Pittsburgh, PA 15219**

    **Mark R. Hamilton, Esquire**
    **Cipriani & Werner, P.C.**
    **650 Washington Road**
    **Suite 700**
    **Pittsburgh, PA 15228**

    **Bryan A. Campbell, Esquire**
    **Law Offices of Bryan A. Campbell**
    **330 Grant Street, Suite 2330**
    **Pittsburgh, PA 15219**

          **LEWIS, LEWIS & REILLY**

          By: _____
               J. Kerrington Lewis, Esquire
               PA. I.D. #15575
               1040 Fifth Avenue
               Pittsburgh, PA 15219
               (412) 391-0818
               *Counsel for Plaintiff*